The Battle Creek Food Company, a Corporation v. Commissioner.
Battle Creek Food Co. v. Commissioner
Docket No. 13009.
United States Tax Court
1949 Tax Ct. Memo LEXIS 251; 8 T.C.M. (CCH) 207; T.C.M. (RIA) 49049; February 28, 1949
*251 During the pendency of certain litigation brought by petitioner's lessor claiming back rentals to be due, a settlement was effected in consideration of payments by petitioner under which, in addition to the settlement of the litigation, petitioner received a conveyance from the lessor of the leased property and also a release from obligations not involved in the litigation. $2Held, that the payments made by petitioner under this settlement are not subject to deduction as business expenses, no part of the amount paid having been allocated to the settlement of the litigation and no part having been shown to have been in fact paid to secure such settlement. Further held, that certain incidental expenses paid by petitioner during the course of the litigation, and fees paid by it to its attorneys for services rendered therein represent allowable deductions as business expenses. Douglas D. Felix, Esq., 1612 Congress Bldg., Miami, Fla., for the petitioner. Wesley A. Dierberger, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies in income tax for the taxable years ended July 31, 1941 and July 31, 1942, in *252 the respective amounts of $7,716.75 and $1,376.98, and a deficiency in declared value excess-profits tax for the year ended July 31, 1942, in the sum of $6.03. Errors are assigned as follows: (a) the disallowance of an expense deduction by petitioner for the taxable year 1941, in the amount of $28,540.64; (b) the disallowance of a deduction in that year of $2,928.34, representing royalties paid or accrued by petitioner in that year; and (c) the disallowance of a deduction of $5,000 in the taxable year 1942, representing the amortization of the cost of certain trade-marks, trade names, secret formulae, processes of manufacture, and other assets. The assignment of error designated (b) was conceded by respondent at the hearing, and as to the assignment of error designated (c), the petitioner admits on brief that it is not entitled to the deduction of $5,000, as made, but argues that any payment held not to be deductible as a business expense should be capitalized and depreciation thereon allowed. In its petition petitioner claims that it should have deducted $40,000 as a business expense instead of $28,540.64, which was so deducted, and asserts it overpaid its tax for the year 1941 *253 in the amount of $3,832.54. In its brief filed herein, petitioner now claims that instead of the $40,000 deduction asserted in its petition, it is entitled to deduct $136,481.82 as a business expense for the year 1941. The parties have filed a stipulation of facts which is included herein by reference. Other facts were established by testimony and exhibits introduced at the hearing. Findings of Fact Petitioner is a Michigan corporation, with principal office at Battle Creek, Michigan. Its tax returns for the years here involved were filed with the collector of internal revenue for the district of Michigan at Detroit, Michigan. Prior to 1900, the Battle Creek Sanitarium, incorporated as the Michigan Sanitarium and Benevolent Association, an organization controlled and dominated by Dr. John H. Kellogg, in addition to holding title to a large luxury hotel, was also engaged in the manufacture of certain health foods under certain secret processes and formulae. These foods were sold under the name and with the trade-mark of the Battle Creek Sanitarium and were widely known. About 1900 it was decided by Battle Creek Sanitarium that the manufacture of these foods be undertaken by *254 a company separate in entity from the Sanitarium. Accordingly, it transferred the aforementioned trade-marks, trade names, secret processes and formulae, together with the real estate and improvements used in the business of manufacturing the aforesaid health foods, to a partnership known as the Battle Creek Sanitarium Company, Limited. Thereafter, a corporation known as the Kellogg Food Company was organized, its name being later changed to the Battle Creek Food Company, the petitioner herein. On September 1, 1908, the petitioner entered into a lease with the Battle Creek Sanitarium Company, Limited. The property covered by the lease was that property theretofore transferred to the lessor, as above described, consisting of the land, improvements and equipment used in the carrying on of the business of the manufacture of the aforementioned health foods, together with the trade-marks, trade names, secret processes and formulae heretofore mentioned. The lease was one from year to year and the rental thereunder was 25 per cent of the net profits of the lessee. At some time thereafter, the assets of the Battle Creek Sanitarium Company, Limited, including the aforementioned lease, were *255 transferred to the Battle Creek Sanitarium Food Company, a corporation. At some later date not disclosed by the record, the Battle Creek Food Company, the petitioner, released to the lessor the land and buildings included in the lease and constructed its own manufacturing plant. On August 28, 1924, the petitioner and the Battle Creek Sanitarium Food Company entered into a contract and lease in lieu of the former lease. By the terms of the new lease the petitioner was granted the right to use for a period of 99 years the aforementioned trade-marks, trade names, secret processes and formulae covered by the terms of the first lease. The consideration for such use was 10 per cent of the net earnings of the petitioner and 10 per cent of the remainder of such net earnings after deducting therefrom amounts for improvements, betterments and additions to surplus, such deductions not to exceed 25 per cent of the sum of the net earnings remaining after the deduction of the first 10 per cent. It was guaranteed that the amount of the 10 per cent payment first provided should not be less than $5,000 annually. On August 28, 1924, the Battle Creek Sanitarium Food Company assigned to the Battle *256 Creek College three-fourths of its right, title and interest to the moneys payable to it under this contract and lease. Both the Battle Creek Sanitarium Food Company and the Battle Creek College were controlled and dominated by Dr. John H. Kellogg, the college having been organized by him and supported from his personal funds. At some later time, but prior to 1941, Dr. John H. Kellogg, although continuing to control the other organizations hereinbefore mentioned, ceased to control the Battle Creek Sanitarium Food Company, and the relations between him and the officers of that company became strained. On or about February 18, 1941, the Battle Creek Sanitarium Food Company brought suit against petitioner and the Battle Creek College, seeking to recover the sum of $85,171.31, together with interest thereon of $42,582.10. The bill of complaint charged that the aforesaid $85,171.31 represented deficiencies in payments made by petitioner under the terms of the aforementioned lease, resulting from irregularities in the accounting processes of petitioner and improper charges and other actions by petitioner which resulted in reducing the amount of royalty payments received by the complainant. *257 The bill of complaint also asked that the assignment to the Battle Creek College of three-fourths of the money payable to the complainant under the lease be declared null and void and that the Battle Creek College be required to account for all moneys received by it. No answer was filed by the petitioner or the Battle Creek College to this bill of complaint, nor did these two defendants admit any liability in any pleading in the aforesaid suit. On March 14, 1941, the two defendants filed a motion to dismiss the bill of complaint on the ground that the complainant had no legal capacity to sue. On or about April 5, 1941, while this motion to dismiss was pending, the petitioner and the Battle Creek Sanitarium Food Company approved and accepted the following proposal of settlement: "PROPOSAL OF COMPROMISE SETTLEMENT OF LEASE AND SUIT "To Battle Creek Sanitarium Food Company, "Battle Creek, Michigan. "Gentlemen: "The following compromise settlement and termination of all your rights under the lease and royalty agreement between yourselves and The Battle Creek Food Company is hereby offered: "In consideration of full release of all claims and conveyance to The Battle Creek *258 Food Company of all your property now held by it under the lease dated August 28, 1924, The Battle Creek Food Company will pay to Welles, Kelsey, Coburn & Harrington, as your attorneys, a sum of $22,687.50 in cash, plus the charges of Allen & North, attorneys, not exceeding $1,000, and will turn over to you $234,500, par value, Series A bonds issued by Battle Creek Sanitarium and Benevolent Association, and $29,000 par value debentures of said issue. "Battle Creek College will release all rights under its assignment of an interest in said lease and will waive all right to participate in the proceeds of said settlement. "If within a period of 12 months after date of settlement a lease shall be entered into between Battle Creek Sanitarium and Benevolent Association and Race Betterment Foundation covering all or some part of the Sanitarium property, said bonds and debentures shall be immediately surrendered up by you to said Battle Creek Sanitarium and Benevolent Association, to be canceled. "A reasonable time, not exceeding 60 days from and after acceptance hereof shall be allowed for performance of the acts necessary to consummation of the compromise settlement herein offered. *259 "Dated the 5 day of April, 1941." Pursuant to the aforesaid agreement, the petitioner, on or about June 5, 1941, paid to Welles, Kelsey, Fuller, Cobourn & hearrington, attorneys for the Battle Creek Sanitarium Food Company, the sum of $22,687.50, and paid to Allen and North, other attorneys for that company, the sum of $1,000 and transferred, assigned and delivered to the Battle Creek Sanitarium Food Company the bonds and debentures described in the aforementioned agreement. These bonds and debentures at that time had a fair market value of 50 per cent of their face value and had a cost basis to petitioner of $109,253.68. Thereafter, on or about June 5, 1941, the Battle Creek Sanitarium Food Company dismissed its bill of complaint and executed and delivered to petitioner the following conveyance and release: "CONVEYANCE AND RELEASE "For and in consideration of the delivery to Battle Creek Sanitarium Food Company of $234,500.00 par value of the 4 1/2% per cent first mortgage bonds of Series A of Battle Creek Sanitarium and Benevolent Association and of $29,000.00 par value of the 5 per cent income debentures of Battle Creek Sanitarium and Benevolent Association, the receipt *260 whereof is hereby acknowledged, Battle Creek Sanitarium Food Company does hereby bargain, sell, assign, transfer, set over and convey to The Battle Creek Food Company all the property of said Battle Creek Sanitarium Food Company now held by said The Battle Creek Food Company under a certain lease from Battle Creek Sanitarium Food Company to The Battle Creek Food Company, dated August 28, 1924, said property being described in said lease as follows: "All food manufacturing business, trade, trade-rights, trade-marks, trade-secrets, formulae, and processes of manufacturing, formerly carried on and conducted and used by Battle Creek Sanitarium Food Company in and about its food manufacturing business at Battle Creek, Michigan, and all other rights and property of whatsoever kind, character or nature known and used by Battle Creek Sanitarium Food Company in and about in connection with said business, and likewise all such business, trade-rights, trade-marks, trade-secrets, formulae and processes of manufacturing which Battle Creek Sanitarium Food Company may have obtained from The Battle Creek Sanitarium Co., Ltd., heretofore, and all appurtinent [appurtenant] rights thereto, together *261 with all food manufacturing business, trade, trade-marks, trade-secrets, formulae and processes of manufacturing now owned by said Battle Creek Sanitarium Food Company. "And for the same consideration said Battle Creek Sanitarium Food Company does remise, release and forever discharge said The Battle Creek Food Company of and from any and all liability, debts, demands, actions and causes of action, whether legal or equitable, which it now has or may have in the future, by reason of or arising out of the said lease. "And for the same consideration, Battle Creek Sanitarium Food Company agrees that in the event within twelve months from the date hereof, a lease shall be entered into between Battle Creek Sanitarium and Benevolent Association and Race Betterment Foundation, covering all or some part of the property of the said association, the above described bonds and debentures shall be immediately surrendered by said Battle Creek Sanitarium Food Company to Battle Creek Sanitarium and Benevolent Association to be cancelled immediately. "In consideration of the delivery of the aforesaid bonds and debentures by The Battle Creek Food Company to Battle Creek Sanitarium Food Company, *262 Charles E. Stewart, Rowland H. Harris, Alfred H. Steinel and Benton N. Colver, being all of the Trustees of Battle Creek Sanitarium Food Company, do as such Trustees of Battle Creek Sanitarium Food Company, and not individually, join in the aforesaid sale, transfer, release and discharge, and in the above agreement as to the disposition of the aforesaid bonds and debentures. "IN WITNESS WHEREOF, said Battle Creek Sanitarium Food Company has caused this agreement to be signed and its corporate seal to be affixed hereto by Charles E. Stewart, its President, and Rowland H. Harris, its Secretary, and the aforesaid Charles E. Stewart, Rowland H. Harris, Alfred H. Steinel and Benton N. Colver, Trustees of said Battle Creek Sanitarium Food Company, have affixed their means hereto this 25th day of April, 1941." On or about June 5, 1941, the Battle Creek College executed and delivered the following release: "RELEASE "For and in consideration of One Dollar ($1.00) and other good and valuable consideration received by Battle Creek College from The Battle Creek Food Company and Battle Creek Sanitarium Food Company respectively, the receipt whereof is hereby acknowledged, Battle Creek College *263 does hereby remise, release, discharge and surrender to Battle Creek Sanitarium Food Company and to Charles E. Stewart, Benton N. Colver, Rowland H. Harris and Alfred H. Steinel, as Trustees of said Battle Creek Sanitarium Food Company any and all rights, obligations, debts, actions and causes of action of whatsoever nature which it now has or may have in the future under and by virtue of a certain assignment executed on August 28, 1924, by Battle Creek Sanitarium Food Company to Battle Creek College of a three-fourths (3/4ths) interest in and to all moneys payable to said Battle Creek Sanitarium Food Company under and by virtue of a certain lease and agreement executed on August 28, 1924, between the Battle Creek Sanitarium Food Company and The Battle Creek Food Company. "For the same consideration said Battle Creek College does remise, release and forever discharge said The Battle Creek Food Company of and from any and all liability, obligation, demands, debts, actions or causes of action which said Battle Creek College now has or may have in the future against said The Battle Creek Food Company by reason of or arising out of the aforesaid assignment of August 28, 1924. "For *264 the same consideration said Battle Creek College waives, releases, discharges and surrenders any and all right or claim it now has or may have in the future in and to all consideration which said Battle Creek Sanitarium Food Company or its said trustees may receive from The Battle Creek Food Company in settlement of the claim of Battle Creek Sanitarium Food Company or of its said trustees for unpaid rental due for past years under the terms of the aforesaid lease and agreement and/or in payment for the conveyance by said Battle Creek Sanitarium Food Company or its said trustees to The Battle Creek Food Company of the property of Battle Creek Sanitarium Food Company now held by said The Battle Creek Food Company under the said lease and agreement dated August 28, 1924. "IN WITNESS WHEREOF, Battle Creek College has caused this release to be signed in its corporate name by its President and its Secretary and its corporate seal to be affixed hereto this 5th day of June, 1941." During the fiscal year ended July 31, 1941, the petitioner paid $1,251.03 for telegrams and telephone messages and also paid during that year to its attorney, Burritt Hamilton, $2,289.61 for services rendered. *265 All of these payments were in connection with the aforesaid suit and agreement of settlement. Both the Battle Creek Sanitarium and Benevolent Association and the Race Betterment Foundation, mentioned in the proposal of compromise of the lease and suit of April 5, 1941, were charities of Dr. John H. Kellogg. The property referred to in the proposal as belonging to the Battle Creek Sanitarium and Benevolent Association was the physical property of that corporation, consisting of a hospital and an eight-story luxury hotel. The condition of the settlement under which the bonds owned and transferred by petitioner were to be surrendered and cancelled never occurred. However, this condition or reservation was a real consideration moving to petitioner in bringing about the settlement agreement. The release of the claims in the bill of complaint against the Battle Creek College was given weight in the settlement and was a consideration for the transfer of the bonds and cash by petitioner. Substantial weight was also given in the settlement negotiations, by the attorneys for the parties, to the fact that the Battle Creek Sanitarium Food Company was selling to petitioner the trade-marks, trade *266 names, secret formulae and other intangible property which were the subject matter of the lease of August 28, 1924. This transfer was a major consideration for the transfer of cash and bonds by petitioner. At the time of the settlement there was no record or memorandum regarding any division of the payment by petitioner as allocable to the complainant's claim for rentals or royalties due. Opinion In its return for the taxable year 1941, the petitioner deducted as ordinary and necessary expenses the sum of $28,540.64. This amount was its then allocation of a portion of the total consideration paid under the settlement agreement to the Battle Creek Sanitarium Food Company as representing the amount pertaining to its release from the claims brought against it for back rentals or royalties. In the petition in this proceeding it is claimed that the amount allocable to the settlement of the back rents and royalties should be $40,000 while in its brief herein petitioner claims that it is entitled to deduct a total of $136,481.82. This figure appears to be the total of its expenditures in cash and property in connection with the suit against it and the Battle Creek College brought by Battle *267 Creek Sanitarium Food Company and the settlement of that suit and extraneous matters. It is true that the payments by petitioner came about as the result of a suit filed by the Battle Creek Sanitarium Food Company charging that petitioner owed a substantial amount in back rentals or royalties under its contract for use of the trade-marks, trade names, secret processes and formulae belonging to the complainant. What merit there was, however, in this claim by the Battle Creek Sanitarium Food Company, we do not know. Liability was never admitted for any amount by the petitioner and no determination was ever made as to what liability it had, if any. The settlement effected between the parties departed far from the question involved in that suit. For the payments actually made by the petitioner under the settlement, very valuable considerations were received by the petitioner, wholly distinct and separate from any back royalties or rentals. No part of the total payment by petitioner was ascribed by the parties as pertaining to the settlement of the claims of the Battle Creek Sanitarium Food Company. Yet, in addition to the settlement of those claims, the petitioner, for that payment, *268 received considerations which the record indicates were of a value in excess of any amount which the complainant could have recovered in that suit had a liability been established. These considerations were: first, a release of the petitioner from its obligation under the lease to pay to the Battle Creek Sanitarium Food Company a substantial portion of its annual earnings during the remaining term of the lease which was in excess of 80 years; second, a conveyance to it of the trade names, trade-marks, secret processes and formulae belonging to the Battle Creek Sanitarium Food Company and which manifestly were of considerable value; third, petitioner received the obligation of the Battle Creek Sanitarium Food Company, under certain conditions, to surrender to one of Dr. John H. Kellogg's organizations the bonds delivered under the settlement, which represented the greater part of the total consideration paid; fourth, petitioner received a release of its obligation to make further payments to the Battle Creek College. It is clear that such portion of the payments made by petitioner as represented a cost of acquiring capital assets is not deductible as an expense of doing business, *269 but is a capital expenditure representing a cost to petitioner of the assets acquired. . Not only has the petitioner failed to establish some basis for the allocation of a portion of the payment to the compromise of the pending litigation, but it has failed to establish that any part of that payment was made for this purpose. For all we know, this petitioner may have been unwilling to pay anything in compromise of the suit alone, and the sole reason for its agreement to pay may have been the fact that it was acquiring property which it considered of a value to it in excess of the full amount of the payment. The officers of petitioner must have known these relevant facts. The reasonable assumption is that these officers knew what considerations induced the settlement payment and the relative weight given each, but no officer of petitioner testified nor was that absence explained. Under the circumstances, we can not assume facts in the absence of proof. Under these conditions, we must and do conclude that the petitioner, upon which the burden rests, has failed to show that any part of the consideration paid under the settlement *270 agreement represented back royalties or rentals, and no amount of that payment is therefore deductible as a business expense. . A different condition exists with respect to the incidental expenses paid by petitioner during the course of the litigation and fees paid by it to its attorneys. These expenses by petitioner would have been occasioned irrespective of the fact that by the final settlement petitioner acquired certain properties and received considerations other than that represented by settlement of the pending suit. These expenditures in the amounts found by us represent proper deductions as business expenses. With respect to the contention of petitioner that any part of the consideration paid in the settlement which is not allowed as a deduction as an expense is to be capitalized and depreciation allowed thereon, it need only be said that the intangible assets acquired by petitioner in this transaction are not of the character subject to depreciation allowance. ; ; . *271 Decision will be entered under Rule 50.